U.S. EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, Plaintiff,

v.

AUTOZONE, INC., and AutoZoners,
LLC, Defendants.

Case No. 14–cv–3385

United States District Court,
N.D. Illinois, Eastern Division.

Signed November 2, 2015

As Amended November 4, 2015

Justin Mulaire, Ethan M.M. Cohen, Gregory M. Gochanour, John C. Hendrickson, U.S. Equal Employment Opportunity Commission, Chicago, IL, for Plaintiff.

Jill A. Cheskes, Beverly Pazon Alfon, Smithamundsen LLC, Chicago, IL, Jennifer F. Kogos, Jones Walker LLP, Tracy E. Kern, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP, New Orleans, LA, Laurie M. Riley, Jones Walker LLP, Miami, FL, for Defendants.

### AMENDED ORDER

Robert M. Dow, Jr., United States District Court Judge

In this action against defendants AutoZone, Inc. and AutoZoners, LLC, the U.S. Equal Opportunity Commission ("EEOC") seeks to correct alleged unlawful employment practices and to provide appropriate relief to three named individuals and to other unnamed individuals with disabilities who were affected by the defendants' prac-tices (collectively, the "Aggrieved Individuals"). Defendant AutoZoners, LLC ("AutoZone") has moved to "limit the scope of litigation to the three stores in which the three named individuals worked." [33] at 2. For the reasons stated below, the Court denies AutoZone's motion [33].[1] This case is set for further status hearing on November 19, 2015 at 9:00 a.m. The Court requests that the parties file a revised joint status report by November 16, 2015.

### I. Background

In 2010, three individuals—Gary Clay, Gonzala Gomez, and Herman Matasar—separately filed charges with the EEOC alleging that they had been discriminated against by their employer AutoZone because of their disabilities. [33-3]—[33-6]. These employees worked at three different AutoZone stores in Illinois. The EEOC investigated the three claims and issued determinations in September 2012 [33-7]. In each determination, the EEOC found that there was reasonable cause to believe that AutoZone had discriminated against the charging party because of his or her disability by refusing to make reasonable accommodations and by discharging the charging party in violation of the Americans with Disabilities Act ("ADA").

In May 2013, the EEOC issued amended determinations for the three individuals [33-8]. In each amended determination, the EEOC found that there was reasonable cause to believe that AutoZone had discriminated against the charging party and against a "class of other employees at its stores throughout the United States," because, "beginning in early 2009, [AutoZone] maintained an attendance policy under which employees were assessed points

---

1. AutoZone indicates in the first sentence of its motion that Autozone, Inc. has been improperly named as a defendant in this action. [33] at 1. If Autozone, Inc. believes that there is no basis for making it a defendant in this action, then it should file (or seek leave to file) an appropriate motion requesting to be dismissed from the case.

and eventually discharged because of absences, including disability-related absences." [33–8] at 1, 3, 5.

In June 2013, the EEOC sent AutoZone a conciliation letter proposing steps to eliminate the discriminatory practices and to provide appropriate relief for Clay, Gomez, and Matasar, and the unnamed Aggrieved Individuals. In July 2013, the EEOC sent AutoZone a notice of failure of conciliation stating that, despite its best efforts, it was unable to secure an acceptable conciliation agreement.

In May 2014, the EEOC filed a complaint against AutoZone, Inc. In August 2014, the EEOC amended its complaint and also named AutoZoners, LLC as a defendant. The Amended Complaint alleges that AutoZone, Inc. and AutoZoners, LLC violated the ADA by: 1) failing to make reasonable accommodations for the Aggrieved Individuals by failing to make exceptions to AutoZone's "no fault" attendance policy for disability-related absences and discharging them as a result; 2) by failing to make reasonable accommodations for the disabilities of Clay and Gomez during their employment; and 3) by discharging Gomez in retaliation for making complaints of disability discrimination. The Amended Complaint alleges that between early 2009 and lasting until at least 2011, AutoZone had a "no fault" attendance policy under which employees accumulated points for absences, unless the absences were of a type exempted by the policy; that the policy prohibited any exemptions other than the ones set forth in the policy; that the policy did not generally permit any exceptions for disability-related absences, even as a reasonable accommodation; and that, as a result, Aggrieved Individuals with even a modest number of disability-related absences were discharged. [18] at 5.

AutoZone filed its answer and affirmative defenses to the amended complaint in October 2014. AutoZone now moves to "limit the scope of this litigation (and therefore, limit the scope of discovery) to the three stores at issue from the administrative phase" of the EEOC's investigation. [33] at 8. The basis for the motion is that: 1) the EEOC allegedly failed to conduct a "nationwide investigation" of AutoZone's employment practices and "never even requested any information from AutoZone" during its investigation of the named individuals' complaints; and 2) the EEOC did not provide an "explanation as to what prompted [it] to rescind its original determination" of the named individuals' complaints and "issue a new one" that contained findings concerning unnamed Aggrieved Individuals. *Id.*

## II. Analysis

AutoZone does not identify a rule of civil procedure that authorizes its motion to "limit the scope of the litigation." The motion does not request the dismissal of or judgment on the EEOC's claim on behalf of unnamed Aggrieved Individuals, nor does it conform to the rules governing motions to dismiss (Fed.R.Civ.P. 12(b)) or motions for summary judgment (Fed. R.Civ.P. 56). The motion might be characterized as a motion for a protective order, because it requests that the Court limit the scope of discovery to only the three Illinois stores in which Clay, Gomez, and Matasar worked. See Fed.R.Civ.P. 26(c)(1). But AutoZone does not allege that the EEOC has served discovery requests that it opposes or that AutoZone has in good faith conferred with the EEOC, which would be required in order to obtain a protective order. See *id.* Regardless, however it is characterized, AutoZone's motion must be denied pursuant to *E.E.O.C. v. Caterpillar, Inc.,* 409 F.3d 831 (7th Cir.2005), which is binding on this Court.

"Title VII of the Civil Rights Act of 1964, 78 Stat. 241, 42 U.S.C. § 2000e *et seq.*, sets out a detailed, multi-step procedure through which the [EEOC] enforces the statute's prohibition on employment discrimination." *Mach Mining, LLC v. E.E.O.C.,* —— U.S. ——, 135 S.Ct. 1645, 1649, 191 L.Ed.2d 607 (2015). First, the process begins when a "person claiming to be aggrieved" files a charge with the EEOC alleging an unlawful workplace practice. *Id.* Second, the EEOC "notifies the employer of the complaint and undertakes an investigation." *Id.* Third, if the EEOC determines that there is probable cause to believe that the allegation has merit, then the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* Fourth, if the EEOC is "unable to secure from the respondent a conciliation agreement" that the EEOC finds acceptable, then "the EEOC may sue the employer." *Id.* at 1649–50.

AutoZone's motion focuses on the second step of this procedure: the EEOC's investigation of alleged unlawful workplace practices. AutoZone argues that there was not an adequate "nationwide investigation" by the EEOC to support its decision to file suit against AutoZone for employment discrimination in any stores other than the three Illinois stores in which Clay, Gomez, and Matasar worked.

Title VII does not define "investigation" or outline any steps the EEOC is required to take in conducting its investigation. That has left some uncertainty about the scope of the EEOC's obligation and the ability of the courts to review the EEOC's pre-complaint investigations. In *E.E.O.C. v. Caterpillar, Inc.,* 409 F.3d 831 (7th Cir. 2005), the Seventh Circuit answered the following question which was certified for interlocutory appeal: "In determining whether the claims in an EEOC complaint

are within the scope of the discrimination allegedly discovered during the EEOC's investigation, must the court accept the EEOC's Administrative Determination concerning the alleged discrimination discovered during its investigation, or instead, may the court itself review the scope of the investigation?" *Id.* at 832. The Seventh Circuit held that the district court could not "limit[ ] the suit to claims that the court finds to be supported by the evidence obtained in the Commission's investigation," because "[t]he existence of probable cause to sue is generally and in this instance not judicially reviewable." *Id.* at 833. The court pointed out that, under Supreme Court precedent, "a suit by the EEOC is not confined 'to claims typified by those of the charging party.'" *Id.* (quoting *General Telephone Co. v. EEOC,* 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). It reasoned that "[i]f courts may not limit a suit by the EEOC to claims made in the administrative charge, they likewise have no business limiting the suit to claims that the court finds to be supported by the evidence obtained in the Commission's investigation." *Id.*

The rationale for prohibiting parties from challenging the sufficiency of the EEOC's investigation is that this would improperly place "the focus of employment discrimination litigation [on] the EEOC's administrative efforts, rather than the validity of the actual claims of discrimination." *E.E.O.C. v. United Rd. Towing, Inc.,* 2012 WL 1830099, at *3 (N.D.Ill. May 11, 2012). Therefore, under this Circuit's precedent, the Court may not inquire into the sufficiency of the EEOC's pre-suit investigation in order to "limit" the scope of the litigation. *Caterpillar,* 409 F.3d at 833. See *E.E.O.C. v. St. Anne's Hosp. of Chicago, Inc.,* 664 F.2d 128, 131 (7th Cir. 1981) (rejecting hospital's argument that the EEOC "failed to satisfy the jurisdic-

tional prerequisites to suit" by "fail[ing] to investigate adequately" a retaliation claim that it discovered while investigating a discrimination claim, because "[a] reasonable cause determination is not to adjudicate a claim but to notify an employer of the [EEOC]'s findings" and "[t]here is no requirement that the agency begin its investigation anew on discovering a reasonably-related theory of liability"); *E.E.O.C. v. Source One Staffing, Inc.,* 2013 WL 25033, at *5 (N.D.Ill. Jan. 2, 2013) (holding that "the sufficiency of the EEOC's pre-suit investigation" is "not a proper subject of discovery in light of" *Caterpillar*); *E.E.O.C. v. Chicago Miniature Lamp Works,* 526 F.Supp. 974, 976 (N.D.Ill.1981) ("[N]o pre-merits judicial inquiry into the basis for EEOC's investigative findings is proper in the ensuing Title VII action. EEOC's determination that on its face says that widespread discrimination was found in an investigation, followed by a pleading signed in conformance with Rule 11, satisfies the jurisdictional requirement of Title VII."). See also *E.E.O.C. v. Keco Indus., Inc.,* 748 F.2d 1097, 1100 (6th Cir. 1984) ("It was error for the district court to inquire into the sufficiency of the Commission's investigation. In previous cases where the employer has objected to the sufficiency of the EEOC's investigation into a discrimination charge, the courts have precluded use of that objection as a basis for dismissing a charge of discrimination made by the EEOC." (citing *St. Anne's Hospital,* 664 F.2d 128; *Chicago Miniature Lamp Works,* 526 F.Supp. 974)); *Georator Corp. v. E.E.O.C.,* 592 F.2d 765, 767 (4th Cir.1979) ("Title VII details the procedures for civil action in an employment discrimination case, but does not provide for preliminary review of the Commission's determination of reasonable cause. Even when suit is brought later by either the EEOC or the charging party, the trial is De novo, and the court will not determine whether substantial evidence supported the Commission's preadjudication finding of reasonable cause.").

Recently, the Supreme Court issued a decision addressing another step of the EEOC's pre-suit procedure: the EEOC's efforts to address alleged unlawful discrimination through "'informal methods of conference, conciliation, and persuasion.'" *Mach Mining,* 135 S.Ct. at 1649 (quoting 42 U.S.C. § 2000e–5(b)). In *Mach Mining,* the Court held that the lower courts "may review whether the EEOC satisfied its statutory obligation to attempt conciliation before filing suit," but "the scope of that review is narrow" in recognition of "the EEOC's extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case." *Id.* The Court determined that "the proper scope of judicial review" of the EEOC's conciliation efforts "matches the terms of Title VII's conciliation provision." *Id.* at 1655. That process demands "that the EEOC communicate in some way * * * about an 'alleged unlawful employment practice' in an 'endeavor' to achieve the employer's voluntary compliance." *Id.* (quoting 42 U.S.C. § 2000e–5). The EEOC "typically does [this] in a letter announcing its determination of 'reasonable' cause." *Id.* at 1655–56. "Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result." *Id.* at 1656. The EEOC then "must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* According to the Court, "[j]udicial review of those requirements (and nothing else) ensures that the [EEOC] complies with the statute." *Id.*

The Supreme Court determined that "[a] sworn affidavit from the EEOC

stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Mach Mining,* 135 S.Ct. at 1656. "If, however, the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the fact-finding necessary to decide that limited dispute." *Id.* The Court concluded that if the reviewing court finds that the EEOC did not "undertake[ ] the mandated efforts to obtain voluntary compliance," then the "appropriate remedy" is an order that the EEOC undertake such efforts. *Id.*

█ The Seventh Circuit has not addressed whether—and, if so, how—the Supreme Court's decision in *Mach Mining* affects its holding in *Caterpillar.* Although *Mach Mining* focuses on the "conciliation" requirement and *Caterpillar* addresses only the "investigation" requirement, *Mach Mining* supports the reasoning applied in *Caterpillar.* Using *Mach Mining's* guidance, "the proper scope of judicial review" of the EEOC's pre-suit investigation should "match[ ] the terms of Title VII's" provisions concerning investigation. *Mach Mining,* 135 S.Ct. at 1655. The Act requires the EEOC to conduct "an investigation" when it receives a charge of an unlawful employment practice (42 U.S.C. § 2000e–5(b)), but it does not mandate any particular investigative techniques or standards. If the EEOC "determines after [its] investigation that there is reasonable cause to believe that the charge is true," then the Act requires it to issue a "reasonable cause" determination that "properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result" so

the parties can engage in conciliation. *Mach Mining,* 135 S.Ct. at 1556.

█ In this case, the court is able to determine from the EEOC's amended determinations that the EEOC conducted an "investigation" as required by the Act. See 2 U.S.C. § 2000e–5(b). The amended determinations state:

> I have determined that the evidence obtained during the course of the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party and a class of other employees at its stores throughout the United States because of their disabilities, in that they were discharged because of disability-related absences and denied reasonable accommodations in connection with such absences, in violation of the ADA. Specifically, beginning in early 2009, Respondent maintained an attendance policy under which employees were assessed points and eventually discharged because of absences, including disability-related absences.

█ at 1, 3, 5. The amended determinations clearly put AutoZone on notice that the EEOC has conducted an investigation of AutoZone's attendance policy and that it may pursue charges against AutoZone for discrimination that has occurred as a result of the policy in AutoZone's "stores throughout the United States." Under *Mach Mining* and *Caterpillar,* this Court's inquiry may go no further. The Supreme Court rejected Mach Mining's argument that a reviewing court should "do a deep dive into the conciliation process," for example by: (1) considering whether the EEOC negotiated in good faith, (2) requiring the EEOC to "lay out 'the factual and legal basis for' all its positions," or (3) "refrain[ing] from making 'take-it-or-leave-it' offers." *Mach Mining,* 135 S.Ct. at 1653–54. The Court explained that, "[f]or

a court to assess any of those choices * * * is not to enforce the law Congress wrote, but to impose extra procedural requirements." *Id.* at 1654–55. Likewise, this Court would be imposing extra procedural requirements if it required the EEOC to offer additional proof that "its investigation was * * * conducted on a nationwide basis." [33] at 2.

Recently, in *E.E.O.C. v. Sterling Jewelers Inc.*, 801 F.3d 96 (2d Cir.2015), the Second Circuit applied *Mach Mining* to an employer's challenge to the sufficiency of the EEOC's pre-suit investigation.[2] The Second Circuit determined that although "*Mach Mining* did not address the EEOC's obligation to investigate," "judicial review of an EEOC investigation is similarly limited." 801 F.3d at 101. The Second Circuit held that it "may not review the *sufficiency* of [the EEOC's] investigation," but instead may review "only whether an investigation occurred." *Id.*

The Second Circuit then discussed how the EEOC could prove that it complied with its obligation to investigate. It determined that, "[i]n order to prove that it has fulfilled its pre-suit obligation, the EEOC must show that it took steps to determine whether there was reasonable cause to believe that the allegations in the charge are true." *Sterling Jewelers*, 801 F.3d at 101. The Second Circuit reasoned that, because the "EEOC's complaint against Sterling alleged nationwide discrimination," the EEOC "must show that it undertook to investigate whether there was a basis for alleging such widespread discrimination." *Id.* However, the Second Circuit explained, the EEOC "need not * * * describe in detail every step it took or the evidence it uncovered," and "[a]s with the conciliation process, an affidavit from the EEOC, stating that it performed its investigative obligations and outlining the steps taken to investigate the charges, will usually suffice." *Id.*

The Second Circuit then proceeded to determine whether the EEOC conducted a nationwide investigation of allegations that Sterling Jewelers had a pattern or practice of sex discrimination in regard to promotion and compensation, or instead investigated only the nineteen individual charges of discrimination that it had received. The Second Circuit reviewed testimony by the EEOC investigator and the EEOC's investigative file and concluded that the "testimony with these documents is sufficient to establish that the investigation was nationwide." *Sterling Jewelers*, 801 F.3d at 103. The Second Circuit rejected the district court's concern that the EEOC's determination referred only to a "class," rather than a "nationwide class," and determined from the evidence that the EEOC must have been referring to a nationwide class. See *id.* at 103–04.

*Sterling Jewelers* does not persuade the Court that, in this case, it must or should review the EEOC's file or require the EEOC investigator to provide an affidavit explaining what steps the EEOC took to investigate the charges against AutoZone. That would be prohibited under *Caterpillar* and also appears to go beyond what the Second Circuit identified as its proper role under *Mach Mining*: determining "whether an investigation occurred," not whether the investigation was sufficient to support the charges brought by the EEOC. *Sterling Jewelers*, 801 F.3d at 101. While *Mach Mining* indicates that the EEOC may need to submit a "sworn affidavit * * * stating that it has performed" its obligation to conciliate (135 S.Ct. at 1656), a similar affidavit appears to be unneces-

---

**2.** The Second Circuit's decision vacated the primary authority on which AutoZone's motion relies, *EEOC v. Sterling Jewelers*, 3 F.Supp.3d 57, 62 (W.D.N.Y.2014). See [33] at 5–6.

sary when the sufficiency of the EEOC's investigation is at issue. The Act's process of "conciliation" requires the EEOC to "tell the employer about the claim— essentially, what practice has harmed which person or class" and to "provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Mach Mining*, 135 S.Ct. at 1652. A reviewing court cannot rely on the parties' pleadings or the EEOC's determinations to assess whether the EEOC met its conciliation obligation, because "[n]othing said or done during and as a part" of conciliation efforts may be "used as evidence in subsequent proceedings without the written consent of the persons concerned." 42 U.S.C. § 2000e– 5(b). It therefore makes sense for the EEOC to provide "[a] sworn affidavit * * * stating that it has performed [its] obligations * * * but that its efforts have failed" and for the court to make factual findings if the employer disputes that the EEOC "provide[d] the requisite information about the charge or attempt[ed] to engage in a discussion about conciliating the claim." *Mach Mining*, 135 S.Ct. at 1655. By contrast, the Act does not require the EEOC to investigate in any particular manner and does not prohibit disclosure of the EEOC's determinations. Therefore, at least under the facts at issue here, the EEOC has met its burden to show that it investigated by issuing a determination that: 1) states that the EEOC investigated and; 2) identifies the alleged discrimination discovered during the investigation.

■ In addition to challenging the sufficiency of the EEOC's investigation, Auto-Zone also asks the Court to limit the scope of the litigation because the EEOC has not provided an "explanation as to what prompted [it] to rescind its original determination" of the named individuals' complaints and "issue a new one" that contained findings concerning unnamed

Aggrieved Individuals. [33] at 8. The EEOC is not required to explain why it issues amended determinations. Auto-Zone's argument relies solely on *E.E.O.C. v. Jillian's of Indianapolis, IN, Inc.*, 279 F.Supp.2d 974 (S.D.Ind.2003), which is not binding on this Court and which was decided prior to and called into doubt by *Caterpillar*. See *Source One Staffing*, 2013 WL 25033 at *5 (declining to apply *Jillian's* because it is "not binding precedent on this Court or in the Seventh Circuit" and "[t]he Seventh Circuit has made it clear, based on its decision in *Caterpillar*, that Source One cannot delve into the sufficiency of the EEOC's pre-suit investigation").

In *Jillian's*, the EEOC issued a determination that there was probable cause to believe that Jillian's had discriminated against four male employees at the Jillian's Indianapolis location. The EEOC then issue an amended determination stating that Jillian's also engaged in a pattern of discrimination against "a class of similarly-situated male applicants and employees." 279 F.Supp.2d at 976–77. The EEOC and Jillian's disagreed about what "class" was being referred to in the amended determination. The court agreed with Jillian's that the "class" was a local class, not a nationwide class, as demonstrated by the fact that the parties' conciliation agreement provided that the parties would attempt to locate class members by advertising in Indianapolis-based publications. *Id.* at 983. In reaching this conclusion, the court also found relevant that the EEOC had not offered any explanation concerning why it amended its determination. *Id.* at 982. Even if *Jillian's* had precedential value, it does not establish a general requirement that the EEOC explain its reasons for issuing an amended determination. And in this case, unlike *Jillian's*, the EEOC's amended determinations unambiguously state that the EEOC has reason-

able cause to believe that AutoZone has "discriminated against * * * a class of other employees at its stores throughout the United States." [33–8] at 1, 3, 5.

## III. Conclusion

For these reasons, the Court denies AutoZone's motion [33]. This case is set for further status hearing on November 19, 2015 at 9:00 a.m. The Court requests that the parties file a revised joint status report by November 16, 2015.